# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ANTONIO ORPIADA,

    Petitioner,

vs.

E. K. MCDANIEL, et al.,

    Respondents.

Case No. 3:11-CV-00013-RCJ-(VPC)

**ORDER**

Before the court are the first amended petition for writ of habeas corpus (#10), respondents' motion to dismiss (#17), petitioner's response (#21), and respondents' reply (#23). The court finds that all the grounds for relief in the first amended petition are untimely, and the court grants respondents' motion to dismiss.

After a jury trial in state court, petitioner was convicted of two counts of attempted murder, two counts of assault with a deadly weapon, six counts of resisting, obstructing, and/or delaying a public officer with a dangerous weapon, and one count of eluding a police officer. Ex. 42 (#12). Petitioner appealed. In an order entered March 4, 2005, the Nevada Supreme Court affirmed, with a limited remand to correct a clerical error in the judgment of conviction. Ex. 52 (#12).

Petitioner then commenced post-conviction proceedings in state court. He mailed a habeas corpus petition to the state district court on February 2, 2006, and it was filed on February 6, 2006. Ex. 58 (#12). Petitioner then filed an amended petition and a supporting memorandum. Ex. 72, Ex. 71 (#13). The state district court then appointed counsel, who filed a supplemental petition. Ex. 84 (#13). The state district court conducted an evidentiary hearing on some of petitioner's grounds.

Ex. 88 (#19). That court denied the petition at the end of the hearing and entered a written ruling on May 21, 2010. Ex. 89 (#13). Petitioner appealed. The Nevada Supreme Court affirmed in an order entered December 10, 2010. Ex. 99 (#13). Remittitur issued on January 5, 2011. Ex. 101 (#13).

Petitioner then commenced his federal habeas corpus action. He mailed his proper-person petition (#6) to this court on January 5, 2011, the same day that the Nevada Supreme Court issued its remittitur in the state post-conviction proceedings. This court appointed counsel, who filed the first amended petition (#10) on May 4, 2011.

Congress has limited the time in which a person can petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). If the judgment is appealed, then it becomes final when the Supreme Court of the United States denies a petition for a writ of certiorari or when the time to petition for a writ of certiorari expires. Jimenez v. Quarterman, 555 U.S. 113, 119-20 (2009). See also Sup. Ct. R. 13(1). Any time spent pursuing a properly-filed application for state post-conviction review or other collateral review does not count toward this one-year limitation period. 28 U.S.C. § 2244(d)(2). The period of limitation resumes when the post-conviction judgment becomes final upon issuance of the remittitur. Jefferson v. Budge, 419 F.3d 1013, 1015 n.2 (9th Cir. 2005). The petitioner effectively files a federal petition when he mails it to the court. Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir. 2003).

The first issue is whether the first amended petition (#10), by itself, is timely, and the issue centers upon the time that petitioner's state habeas corpus petition was pending. The petition was properly filed, and thus the time that it was pending tolls the federal period of limitation pursuant to

§ 2244(d)(2). The state habeas corpus proceedings concluded with the issuance of the remittitur on January 5, 2011, and the period of limitation resumed the next day. The question is when the tolling started. Petitioner argues that the state petition was effectively filed on February 2, 2006, when he gave that petition to prison officials for mailing to the state district court, pursuant to a prison mailbox rule. Respondents argue that the state petition was filed on February 6, 2006.

The undersigned has considered the issue of the prison mailbox rule before, in Israel v. Smith, 3:09-CV-00113-RCJ-(RAM). The court concluded that the prison mailbox rule did not apply in determining when a post-conviction petition filed in Nevada state court is properly filed for the purposes of § 2244(d)(2) tolling. However, ultimately it made no difference in Israel whether the prison mailbox rule applied because the court also determined that there was no tolling for a two-year span of time.[1] The four days between petitioner's delivery of his state habeas corpus petition to prison officials and the filing of that petition makes a difference in this case.

Ultimately, the court will follow its earlier reasoning in Israel. A state post-conviction petition is properly filed, and eligible for tolling pursuant to § 2244(d)(2), when the petitioner has met the filing conditions imposed by state laws.

> [A]n application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

Artuz v. Bennett, 531 U.S. 4, 8 (2000). In a footnote, the Supreme Court reserved the question whether exceptions to a timely filing requirement would keep a late application from being considered improperly filed pursuant to § 2244(d)(2). The Supreme Court later answered that question in the negative. Pace, 544 U.S. at 413. The court further held "that time limits, no matter their form, are 'filing' conditions." Id. at 417. Later, the Supreme Court reaffirmed these holdings. Allen v. Siebert, 552 U.S. 3, 7-8 (2007). In short, a state post-conviction petition is properly filed, and eligible for tolling pursuant to § 2244(d)(2), when the petitioner has met the filing conditions

---

[1] The court of appeals has since reversed and remanded for consideration of Israel's claim of actual innocence.

1  imposed by state laws.  The Nevada Supreme Court has held that a post-conviction petition is not
2  properly filed according to Nevada law when it is mailed, but when it is received by the court.
3  Gonzales v. State, 53 P.3d 901, 903-04 (Nev. 2002).  In a case in which timeliness was not an issue,
4  the Ninth Circuit has acknowledged that a state habeas corpus petition is not filed under Nevada law
5  until received by the court clerk.  Koerner v. Grigas, 328 F.3d 1039, 1043 n.1 (9th Cir. 2003).  If the
6  court applied a prison mailbox rule to a Nevada state habeas corpus petition, then the court would
7  be tolling the federal period of limitation during time that the state petition in fact is not properly
8  filed.  On the other hand, the Court of Appeals for the Ninth Circuit has held that a mailbox rule
9  applies to the tolling of the federal period of limitation while a state habeas corpus petition is
10 pending.  See, e.g, Porter v. Ollison, 620 F.3d 952, 958 (9th Cir. 2010); Campbell v. Henry, 614
11 F.3d 1056, 1058-59 (9th Cir. 2010); Smith v. Ratelle, 323 F.3d 813, 815 n.2 (9th Cir. 2003); Huizar
12 v. Carey, 273 F.3d 1220, 1223 (9th Cir. 2001).  These decisions, and others, ultimately draw upon
13 Saffold v. Newland, 250 F.3d 1262 (9th Cir. 2000) (amended), overruled on other grounds, Carey v.
14 Saffold, 536 U.S. 214 (2002).  Saffold v. Newland predates the announcement of the rule in Artuz v.
15 Bennett and its reaffirmation in Pace and Allen v. Siebert that, regardless of exceptions, a state
16 habeas corpus petition is properly filed when it complies with the applicable state laws and rules.
17 Furthermore, to the best of this court's knowledge, all of the cases in which the court of appeals has
18 applied the mailbox rule for § 2244(d)(2) tolling involve California prisoners.  Unlike Nevada,
19 California observes a prison mailbox rule for its state habeas corpus petitions.  See Silverbrand v.
20 County of Los Angeles, 205 P.3d 1047 (Cal. 2009); In re Jordan, 840 P.2d 983 (Cal. 1992).  The
21 court of appeals has applied the same rule to California state habeas corpus petitions that the
22 California courts themselves apply.  If this court were to apply a mailbox rule to Nevada state
23 habeas corpus petitions, then it would not be following the rule of Bennett, Pace, and Siebert.
24 Instead, it would be holding that the state petition was properly filed for the purposes of
25 § 2244(d)(2) tolling when state law dictated that it was not properly filed.  For these reasons, this
26 court will not apply a mailbox rule in determining when petitioner's state habeas corpus petition
27 was filed.
28

1  The first amended petition (#10) is untimely. Between the finality of petitioner's judgment
2 of conviction on June 2, 2005, and the filing of the state habeas corpus petition on February 2, 2006,
3 249 days elapsed. Between the issuance of the remittitur in the state habeas corpus proceedings on
4 January 5, 2011, and the filing of the first amended petition (#10) on May 4, 2011, 119 days
5 elapsed. A total of 368 non-tolled days elapsed, and that exceeds the one-year period of limitation.[2]
6  The first amended petition (#10) could be timely if it relates back to the original petition
7 (#6). The original petition was effectively filed on January 5, 2011, the same day that the Nevada
8 Supreme Court issued its remittitur in the state habeas corpus proceedings. Only 249 non-tolled
9 days had passed by that point. Relation back, pursuant to Rule 15(c) of the Federal Rules of Civil
10 Procedure, is allowed "[s]o long as the original and amended petitions state claims that are tied to a
11 common core of operative facts . . . ." Mayle v. Felix, 545 U.S. 644, 664 (2005).
12  The court finds that the first amended petition (#10) does not relate back to the original
13 petition (#6). First, petitioner's argument for relation back is, in full, "While not necessary to
14 resolution of respondents' timeliness argument, petitioner submits that portions of his First
15 Amended Petition do relate back to the original federal petition (CR 6)." Opposition, p. 9 n.4 (#21).
16 Petitioner makes no attempt to show how the grounds in the first amended petition actually do relate
17 back, and that amounts to a waiver of the argument. See King v. Ryan, 564 F.3d 1133, 1142-43 (9th
18 Cir. 2009).

---

[2]Petitioner's calculations do not count the date of filing the state habeas corpus petition as an elapsed day. Opposition, p. 8 n.2 (#21). In a recent decision of the court of appeals, its calculations do include those days as elapsed days. See Cross v. Sisto, 676 F.3d 1172, ___ (9th Cir. 2012). Ultimately, one day makes no difference in this case. Petitioner's method of calculation would create a filing deadline of Monday, May 2, 2011, and respondents' method of calculation would create a filing deadline of Sunday, May 1, 2011. The deadline by respondents' method then would be extended to Monday, May 2, 2011. See Fed. R. Civ. P. 6(a)(1)(C). Either way, the first amended petition (#10) is two days late.
 Petitioner's calculations also do not count the date of filing the amended federal habeas corpus petition (#10) as an elapsed day. Petitioner is incorrect. First, a federal habeas corpus petition does not toll the period of limitations. Duncan v. Walker, 533 U.S. 167, 181-82 (2001). Second, not counting the date of filing a federal petition would give petitioner a free day that is not authorized by statute or rule. As noted just above, Monday, May 2, 2011 was the last day of the one-year period of limitation. Petitioner needed to file his amended petition by the end of that day. If petitioner had filed his amended petition on May 3, 2011, then it would have been a day late.

1       Second, no ground in the first amended petition (#10) shares a common core of operative facts with any ground in the original petition (#6) because petitioner alleged no facts in any ground of the original petition (#6). Grounds 1, 2, and 6(B) of the first amended petition (#10) share legal theories with grounds 1, 2, and 3, respectively, of the original petition (#6). However, the grounds in the original petition (#6) contain only legal conclusions and no factual allegations. Grounds 3, 4, 5, and 6(A) of the first amended petition (#10) do not share even legal theories with the grounds in the original petition (#6).[3] In short, there is nothing in the original petition (#6) for the grounds in the first amended petition (#10) to relate back.

      Respondents present two alternative arguments. First, they argue that ground 3 is procedurally defaulted. Next, they argue that grounds 1 and 2, in part, and grounds 4 and 6, in whole, are unexhausted.

      Ground 3 is a claim that petitioner's convictions violate the Double Jeopardy Clause of the Fifth Amendment because he is being punished multiple times for the same conduct. This is a claim that petitioner could have raised on direct appeal, but he did not raise the claim. Petitioner did raise the claim in his proper-person amended state habeas corpus petition. Ex. 72, pp. 5e-5f (#13). See also Ex. 71, pp. 8-10 (#13) (supporting memorandum). After counsel was appointed, petitioner raised the same claim in his supplemental state habeas corpus petition. Ex. 84, pp. 7-8 (#13). The respondents in the state proceedings answered the double-jeopardy claim on its merits. Ex. 75, pp. 2-7 (#13); Ex. 85, p. 3 (#13). The state district court denied the claim on its merits. Ex. 89, pp. 4-8 (#13). On appeal, petitioner argued the double-jeopardy claim on its merits. Ex. 97, pp. 6-7 (#13). The respondents largely did the same. Ex. 98, pp. 7-10 (#13). They also noted:

> It is not clear that Orpiada asserts his appellate counsel was ineffective for failing to argue the double jeopardy and redundancy issues (Appellant's Appendix, 19-23, 44-45). To the extent that the issue could have been previously raised in the district court or on direct appeal, and that is not based on an allegation of ineffective assistance of counsel, it is procedurally barred. NRS 34.8810(1)(b) [sic].

---

[3] Ground 3 of the original petition (#6) is a claim that appellate counsel provided ineffective assistance by not raising a claim of double jeopardy on direct appeal; petitioner did not allege any facts that could show the validity of a double-jeopardy claim or how counsel performed deficiently. Ground 3 of the first amended petition (#10) is the double-jeopardy claim itself. That claim is distinct from the claim of ineffective assistance of counsel.

1  Ex. 98, p. 10 n.3 (#13). The Nevada Supreme Court ruled:

> Orpiada also contends that the district court erred by denying his double jeopardy and redundancy claim. However, because this claim was not presented as an ineffective-assistance claim and could have been raised on direct appeal, it was procedurally barred absent a showing of good cause and actual prejudice. See NRS 34.810(1)(b)(2), (3). Orpiada did not allege good cause and actual prejudice in his petition and the district court did not make a finding of good cause and actual prejudice. We conclude that the district court should have dismissed this claim as procedurally barred and Orpiada is not entitled to relief. See State v. Dist. Ct. (Riker), 121 Nev. 225, 231, 112 P.3d 1070, 1074 (2005) ("Application of statutory procedural default rules to post-conviction habeas petitions is mandatory.").

Ex. 99, p. 2 (#13).

A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state-law ground that is independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 730-31 (1991).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750; see also Murray v. Carrier, 477 U.S. 478, 485 (1986). The grounds for dismissal upon which the Nevada Supreme Court relied in this case is an adequate and independent state rule. Vang v. Nevada, 329 F.3d 1069, 1074 (9th Cir. 2003) (Nev. Rev. Stat. § 34.810).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. Murray v. Carrier, 477 U.S. at 488.

To show prejudice, the petitioner "must establish 'not merely that the errors at his trial constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Correll v. Stewart, 137 F.3d 1404, 1415 (9th Cir. 1998) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

For good cause, petitioner argues that he had no opportunity to argue cause and prejudice in his state habeas corpus proceedings because the respondents never raised procedural default as an issue until their fast-track appellate brief. However, as the Nevada Supreme Court noted in its

ruling in petitioner's case, and in its earlier ruling in <u>Riker</u>, § 34.810 is a mandatory pleading requirement, and § 34.810 itself specifically states:

> 3. Pursuant to subsections 1 and 2, the petitioner has the burden of pleading and proving specific facts that demonstrate:
>
> (a) Good cause for the petitioner's failure to present the claim or for presenting the claim again; and
>
> (b) Actual prejudice to the petitioner.
>
> The petitioner shall include in the petition all prior proceedings in which the petitioner challenged the same conviction or sentence.

The proper-person petition form that petitioner used gave him the opportunity to explain why he did not raise issues in an earlier proceeding. Ex. 72, p. 4 (#13) (question 18). Furthermore, petitioner later was represented by counsel, who presumably knew state law but who did not allege cause and prejudice in the supplemental petition. Regardless of what the respondents did, it was petitioner's obligation to allege cause and prejudice, and it was the state courts' obligations to apply § 34.810.

Petitioner's argument for good cause has a more fundamental flaw, which respondents have noticed. A demonstration of good cause requires petitioner to show why some factor external to his defense prevented him from complying with the state procedural rule, which is the requirement that he raised the double-jeopardy claim on <u>direct appeal</u>. See <u>Murray v. Carrier</u>, 477 U.S. at 488. Instead, petitioner argues why he did not demonstrate good cause in his <u>state post-conviction proceedings</u>. Petitioner has failed to present an argument in accordance with the correct standard of good cause.

Petitioner also argues that if he had known about the procedural bar before respondents filed their fast-track statement—again, the forms, representation by counsel, and the law itself made the pleading requirement of § 34.810 clear—then he would have argued on post-conviction appeal that he did not raise the double-jeopardy claim on direct appeal because of ineffective assistance of appellate counsel. This argument is contained in ground 6(b) of the first amended petition (#10). The argument cannot be good cause to excuse the procedural default because, as the court explains below, that ground itself is unexhausted. <u>Murray v. Carrier</u>, 477 U.S. at 488-89.

The court will not examine whether petitioner suffered prejudice from the procedural default because the court has concluded that petitioner has not shown good cause. The court dismisses ground 3 as procedurally defaulted.

Respondents next argue that grounds 1, 2, 4, and 6 are unexhausted, in whole or in part. Before a federal court may consider a petition for a writ of habeas corpus, the petitioner must exhaust the remedies available in state court. 28 U.S.C. § 2254(b). To exhaust a ground for relief, a petitioner must fairly present that ground to the state's highest court, describing the operative facts and legal theory, and give that court the opportunity to address and resolve the ground. See Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam); Anderson v. Harless, 459 U.S. 4, 6 (1982). "[N]ew factual allegations do not render a claim unexhausted unless they 'fundamentally alter the legal claim already considered by the state courts.'" Chacon v. Wood, 36 F.3d 1459, 1468 (9th Cir. 1994) (quoting Vasquez v. Hillery, 474 U.S. 254, 260 (1986)).[4]

The arguments whether grounds 1 and 2 are exhausted revolve around what facts petitioner presented to the state courts. For this reason, the court borrows a basic summary of facts from the state district court's order denying the state habeas corpus petition. See Ex. 89 (#13). On December 13, 2002, a highway patrol trooper saw petitioner run a red light; petitioner also was speeding slightly. The trooper turned on his patrol car's overhead lights, petitioner sped away, and the trooper chased petitioner. Petitioner stopped at one intersection because cars waiting at a red light were blocking the lanes. The trooper exited his patrol car and ordered petitioner to get out of his car. Petitioner might have shot at the trooper, and petitioner drove away, striking another car. The trooper returned to his patrol car and again chased petitioner. Petitioner entered a freeway, drove a short distance, and stopped. The trooper exited his patrol car, and petitioner opened fire. Other

---

[4] A tension exists in the law regarding the exhaustion of state-court remedies. Recently, the Supreme Court held that when a federal court reviews a claim, the merits of which have been decided by a state court, the review is restricted to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). In other words, if Vasquez is still good law, then it is possible for a ground alleging new facts to survive a challenge to its exhaustion, but the court would be unable to consider those new facts if 28 U.S.C. § 2254(d) is applicable. The court of appeals has recognized this tension, but has deferred answering the question. Stokley v. Ryan, 659 F.3d 802, 808 (9th Cir. 2011). This court will do the same. Even if Vasquez is entirely still good law, the new facts that petitioner presents fundamentally alter his claims, for the reasons explained below.

-9-

troopers arrived, and they returned fire.  Petitioner eventually complied with orders to stop firing and to exit his car.

Ground 1 is a claim that trial counsel, Bruce Voorhees, provided ineffective assistance because he did not investigate the events of the case or potential mitigating circumstances. Petitioner's amended state petition had no corresponding ground. Ex. 72 (#13). His supplemental state petition raised a similar ground. Petitioner alleged that an investigation would have shown:

> (1) that Mr. Orpiada's car was old and the door and window handles were inoperable except with pliers, thereby making it impossible for Mr. Orpiada to comply with the Troopers' requests that he immediately exit his car, (2) that Mr. Orpiada had been wounded to the extent that he could not operate the door and window handles with pliers, (3) that Mr. Orpiada did not shoot at the Troopers by the locations of the bullet holes inside Mr. Orpiada's car, thereby proving that Mr. Orpiada did not attempt to murder them, and (4) that the gun and ammunition that Mr. Orpiada possessed actually belonged to his former roommate, who Mr. Orpiada is informed and believes is an ex-felon, and who testified against him, thereby allowing Mr. Orpiada's attorney to impeach the prosecution witnesses.

Ex. 84, p. 7 (#13). In federal ground 1, petitioner alleged the facts outlined above. Petitioner also alleged that the former roommate, Lorin Gross, was threatened with prosecution unless he testified against petitioner, and that an investigation would have revealed petitioner's history of mental problems. First amended petition, pp. 8-10 (#10). The latter two facts were not presented to the state courts.

Each of the two new facts that petitioner alleges in ground 1 fundamentally alter the claim. Petitioner's allegations in state court indicate that if counsel had investigated his former roommate, then counsel would have discovered the roommate's conviction for a felony, and counsel could have used that fact to impeach the roommate on cross-examination. Petitioner's new allegations indicate that an investigation would have revealed that the roommate had received a substantial inducement to testify against petitioner. Cross-examination about that inducement would be an entirely different means of impeaching the roommate. Petitioner's allegations in the first amended petition (#10) about his history of mental health share no relation to any facts that petitioner ever presented to any state court; at no time until now did petitioner argue that he suffered from a mental impairment. To that extent, ground 1, paragraphs 1 and 3, and items (a) and (c) in paragraph 5, are unexhausted.

Ground 2 of the first amended petition (#10) is a claim that counsel provided ineffective assistance by giving petitioner erroneous advice not to testify at trial. Petitioner did not raise any

-10-

such claim in his amended state petition, but he did raise a similar claim as ground 3 of his supplemental state petition. Ex. 84, pp. 8-10 (#13). In the supplemental state petition, petitioner alleged these facts:

> (1)   During the trial, Mr. Orpiada informed the District Court that he wished to testify in his own defense.
>
> (2)   The District Court examined Mr. Orpiada about his request to testify and then took a brief recess so that Mr. Orpiada could further discuss with Mr. Voorhees the merits of testifying on his own behalf.
>
> (3)   After the brief recess, Mr. Voorhees informed the District Court that Mr. Orpiada would not testify.
>
> (4)   In point of fact, Mr. Orpiada still wished to testify on his own behalf, but the District Court failed to further examine Mr. Orpiada on this point.

Ex. 84, p. 9 (#13). In the federal first amended petition (#10), petitioner expands upon his allegations in the supplemental state petition. Many of the additional facts do not change the nature of the claim, but petitioner now alleges two facts, not presented to the state courts, that do change the nature of the claim. First, petitioner alleges that in the opening statement, trial counsel told the jury that petitioner wanted to testify about exactly what happened and why it happened. First amended petition, p. 18 (#10). This fact does not appear in supplemental state ground 3. Second, petitioner alleges:

> Later that day after the state's case was concluded, <u>and in the jury's presence, counsel called Orpiada as a witness and Orpiada was sworn</u>. . . . Upon Orpiada taking the witness stand counsel immediately requested a recess and the jury was excused.

<u>Id.</u> (emphasis added, citations omitted). Nowhere in supplemental state ground 3 did petitioner note that petitioner was called to testify in the jury's presence. These two new facts have created a new claim. No longer is ground 2 solely about the advice that trial counsel gave petitioner. Now, petitioner also alleges:

> The jury likely concluded from such events that something had happened during the trial to impact Orpiada's status as a witness, i.e. something perceived by his attorney as so adverse that he should not testify. Such a jury perception seriously impeded the prospect for defense verdicts in the case.

<u>Id.</u>, p. 19. Ground 2 has become both a claim that trial counsel gave poor advice to petitioner and a claim that counsel's actions caused the jury to be biased against petitioner. Petitioner has not fairly

-11-

presented the latter claim, and its associated facts, to the state courts.[5] That part of ground 2 is unexhausted.

Ground 4 is a claim that trial counsel provided ineffective assistance because he did not develop defenses of voluntary intoxication or diminished capacity to the charges. This ground is not exhausted for the same reason why the mental-impairment allegation in ground 1 is not exhausted: Petitioner never presented this fact to the state courts, and it fundamentally changes the claim that trial counsel failed to investigate the case.

Ground 6 contains two claims of ineffective assistance of appellate counsel. Concerning ground 6(a), evidence at trial showed that "187" was written in dirt on petitioner's car doors. The trial court allowed a police officer to testify that it was his opinion that "187" was referring to Cal. Penal Code § 187, which defines murder. Appellate counsel challenged that ruling on appeal. The Nevada Supreme Court held that the district court did not err in its ruling. Ex. 52, pp. 2-3 (#12). In ground 6(a), petitioner argues that appellate counsel provided ineffective assistance because he did not present the challenge to the district court's ruling as a matter of federal law. Petitioner raised the same claim in ground 4 of his amended state petition and supporting memorandum. Ex. 72, pp. 5f-56; Ex 71, pp. 10-12 (#13). However, petitioner did not present the claim to the Nevada Supreme Court in his post-conviction appeal. See Ex. 97, pp. 5-7 (#13). Ground 6(a) is unexhausted.[6]

In ground 6(b), petitioner claims that appellate counsel provided ineffective assistance because he did not raise on direct appeal a claim that petitioner's convictions on multiple counts

---

[5] At the state-court evidentiary hearing, the judge noted that during the trial petitioner had taken the stand and was about to testify when trial counsel asked for a recess. However, the judge's ruling addressed only the claim presented, that petitioner had received poor advice from trial counsel. The judge did not discuss any effect that the events in the courtroom had upon the jury. Ex. 88, pp. 23-24, 31 (#13). Neither the written order of the district court nor the order of the Nevada Supreme Court discussed any possible effect upon the jury.
This court can deem an issue exhausted when state courts address the issue even though it was not formally raised in a petition, but that did not happen in petitioner's case. Cf. Sandgathe v. Maass, 314 F.3d 371, 376-77 (9th Cir. 2002).

[6] Petitioner does not contest this point. His argument regarding ground 6 is related only to ground 6(b). Opposition, pp. 16-17 (#21).

violated the Double Jeopardy Clause of the Fifth Amendment.[7]  The parties agree that petitioner did not raise this claim in his post-conviction appeal, but they disagree over the significance of that fact. Petitioner argues that he did not raise the ineffective-assistance claim on post-conviction appeal because the respondents answered the underlying double-jeopardy claim solely on the merits and the district court denied the underlying double-jeopardy claim solely on the merits; only on post-conviction appeal did the respondents suggest that the double-jeopardy claim was procedurally barred, and the Nevada Supreme Court agreed.  This argument assumes that petitioner actually raised an ineffective-assistance claim in his state habeas corpus petitions.  The court has reviewed the original state petition, Ex. 58, the amended state petition and supporting memorandum, Ex. 72, Ex. 71, and the supplemental state petition, Ex. 84, and the court can find no mention about appellate counsel's failure to raise a double-jeopardy claim on direct appeal.[8]  That moots petitioner's argument about being lulled into not raising the ineffective-assistance claim on post-conviction appeal.  Ground 6(b) is unexhausted not because petitioner did not raise the corresponding claim on state post-conviction appeal.  Ground 6(b) is unexhausted because petitioner did not raise the corresponding claim at all in state post-conviction proceedings.

Furthermore, the court is not persuaded by petitioner's argument that respondents should be precluded from arguing that ground 6(b) is unexhausted.  The case that petitioner cites for this proposition, Russell v. Rolfs, 893 F.2d 1033 (9th Cir. 1990), is inapplicable in its narrow sense. Russell filed a federal habeas corpus petition after his direct appeal in Washington state courts.  Id. at 1034.  The federal district court dismissed the petition for failure to exhaust his state remedies, apparently based upon the state's assertion that such remedies, a personal-restraint petition, were adequate and available.  Id.  However, in state court, the state argued, and the state court agreed, that the petition was procedurally barred because the issues were the same as what Russell had raised on

---

[7] The court has ruled above that the underlying claim, ground 3, is procedurally defaulted because the Nevada Supreme Court held on post-conviction appeal that petitioner could have raised the claim on direct appeal.

[8] In the state petitions, petitioner made generic claims that appellate counsel did not raise all issues on direct appeal, but petitioner did not mention what those issues were, and thus gave the state courts no notice about a failure to raise a double-jeopardy claim.

direct appeal. Id. at 1035. Russell returned to federal court, and the state argued that the petition was procedurally defaulted because the state courts used state-law grounds for denying Russell relief. Id. In an alternative holding,[9] the court of appeals ruled that the state was precluded from arguing procedural default in federal district court because the state had initially told the federal district court that remedies were adequate and available back in state court, and then argued in state court that the petition was procedurally barred. Id. at 1037-39. Contrary to Russell, respondents in this action have never indicated that a return to state court would be free from procedural bars for petitioner. They have done the opposite. Reply, p. 17 (#23). Furthermore, this court generally is aware that Nevada has a statute of limitations and a restriction on second or successive petitions,. Nev. Rev. Stat. §§ 34.726, 34.810, and, specifically, the court just spent some time explaining why ground 3 is procedurally defaulted because the Nevada Supreme Court denied him relief pursuant to § 34.810. At this point in the proceedings, the parties and the court know that petitioner faces some difficult procedural requirements if he returns to state court.

Petitioner might be trying to apply Russell in a more general sense, that because respondents in state district court answered the double-jeopardy claim on the merits, only to argue successfully on post-conviction appeal that the double-jeopardy claim is procedurally barred, when it was too late for petitioner to raise the claim of ineffective assistance of appellate counsel, they should be precluded now from arguing that ground 6(b) is unexhausted. That argument ignores the nature of § 34.810. Before respondents did anything, including an appearance, in the state post-conviction proceedings, petitioner was on notice from the state petition form and § 34.810(3) that he needed to plead and prove why he did not raise the double-jeopardy claim on direct appeal. Post-conviction counsel, when appointed, also knew or should have known of the requirements of § 34.810. One possible explanation for the failure to raise the double-jeopardy claim on direct appeal was ineffective assistance of appellate counsel. However, petitioner did not explain in the space provided in the state petition form why he did not raise the double-jeopardy claim on direct appeal,

---

[9]The court of appeals held primarily that the federal petition was not procedurally defaulted because the state courts actually had reached the merits of Russell's claims. 893 F.2d at 1035-36.

1  and he did not raise a separate claim of ineffective assistance of counsel for failing to raise the
2  double-jeopardy claim on direct appeal.  Whatever petitioner's reasons were for not pleading
3  according to the requirements of § 34.810 and for not raising the appropriate claim of ineffective-
4  assistance of appellate counsel, respondents' actions were not the explanation.
5  　　　　　To appeal the denial of a petition for a writ of habeas corpus, Petitioner must obtain a
6  certificate of appealability, after making a "substantial showing of the denial of a constitutional
7  right."  28 U.S.C. §2253(c).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds.  We hold as follows:  When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

14  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  After reviewing the first amended petition (#10), the
15  court concludes that reasonable jurists would find it debatable that petitioner states valid claims of
16  denial of constitutional rights.  The court also concludes that reasonable jurists would find the
17  court's ruling on the timeliness of the first amended petition (#10) to be debatable.  Consequently,
18  the court will issue a certificate of appealability.
19  　　　　　Petitioner had submitted an unopposed motion for an additional enlargement (#20) to file his
20  opposition (#21).  The court grants this motion.
21  　　　　　IT IS THEREFORE ORDERED that petitioner's unopposed motion for an additional
22  enlargement (#20) is **GRANTED**.
23  　　　　　IT IS FURTHER ORDERED that respondents' motion to dismiss (#17) is **GRANTED**.
24  This action is **DISMISSED** with prejudice for being untimely.  The clerk of the court shall enter
25  judgment accordingly.
26  ///
27  ///
28  ///

IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on the issue whether the court is correct in its determination that this action is untimely.

Dated:   September 14, 2012.

_____
ROBERT C. JONES
Chief United States District Judge